UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------- x
                                                               :
Peregrine Fixed Income Limited (in liquidation),               :      No. 05-CV-4351 (RMB)
                                                               :      ECF Case
               Plaintiff,                                      :
                                                               :
     -against-                                                 :
                                                               :
JP Morgan Chase Bank (formerly known as The Chase              :
Manhattan Bank and having merged with Morgan                   :
Guaranty Trust Company of New York),                           :
                                                               :
               Defendant.                                      :
-------------------------------------------------------------- x


### MEMORANDUM OF LAW BY JPMORGAN CHASE BANK, N.A. IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED

ALLEN & OVERY LLP
Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York 10020
Tel: (212) 610-6300

*Attorneys for Defendant
   JPMorgan Chase Bank, N.A.,
   successor-in-interest to
   JPMorgan Chase Bank*

# **TABLE OF CONTENTS**

Page (s)

TABLE OF AUTHORITIES .................................................................................................. ii

PRELIMINARY STATEMENT ............................................................................................. 1

SUMMARY OF ALLEGATIONS .......................................................................................... 2

ARGUMENT............................................................................................................................ 5

THE AMENDED COMPLAINT SHOULD BE DISMISSED
BECAUSE PLAINTIFF FAILS TO ALLEGE FACTS
ESTABLISHING ANY BREACH BY JPMORGAN CHASE BANK ................................... 5

    A. The Terms of the Parties' Agreement are Unambiguous................................. 6

        1. JPMC is Required to Request Quotations........................................... 8

            a. Valuation Date to be "As of the Same Day and Time" ........... 8

            b. Requests Made "On or as Reasonably Practicable
               after the Relevant Early Termination Date" ........................... 9

        2. Quotations to be Obtained as of a
           Date Selected in Good Faith by JPMC ............................................. 11

    B. The Complaint Fails to Allege Any Breach by JPMC................................... 12

    C. Dismissal With Prejudice............................................................................... 14

CONCLUSION....................................................................................................................... 15

## TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*,
    136 F.3d 82 (2d Cir. 1998) .......................................................................................... 6

*Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*,
    57 F.3d 146 (2d Cir. 1995) .......................................................................................... 6

*Chimart Assocs. v. Paul*,
    66 N.Y.2d 570, 489 N.E.2d 231, 498 N.Y.S.2d 344 (N.Y. 1986) ............................... 6

*Cohen v. United States Fid. & Guar. Co.*,
    No. 04 Civ. 5921 (RMB) (MHD),
    2005 U.S. Dist. LEXIS 8015, 2005 WL 1036097 (S.D.N.Y. May 4, 2005) ............... 5

*Curry Rd. v. K Mart Corp.*,
    893 F.2d 509 (2d Cir. 1990) ........................................................................................ 7

*Faulkner v. Verizon Communics., Inc.*,
    189 F. Supp. 2d 161 (S.D.N.Y. 2002) ....................................................................... 14

*Halifax Fund, L.P. v. MRV Communs.*,
    No. 00 Civ. 4878 (HB),
    2001 U.S. Dist. LEXIS 20933, 2001 WL 162261 (S.D.N.Y. Dec. 18, 2001),
    *aff'd* 54 Fed. Appx. 718 (2d Cir. 2003) ..................................................................... 10

*Kaufman v. Guest Capital, L.L.C.*,
    No. 03 Civ. 1509 (RJH),
    2005 U.S. Dist. LEXIS 1033, 2005 WL 167602, (S.D.N.Y. Jan. 25, 2005) ............. 12

*Lentell v. Merrill Lynch & Co.*,
    396 F.3d 161 (2d Cir. 2005) ........................................................................................ 5

*New Paradigm Software Corp. v. New Era of Networks, Inc.*,
    No. 99 Civ. 12409 (RMB) (AJP),
    2002 U.S. Dist. LEXIS 23753, 2002 WL 31749396 (S.D.N.Y. Dec. 9, 2002) ........... 6

*Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
    No. 00 Civ. 8688 (WHP),
    2002 U.S. Dist. LEXIS 3747, 2002 WL 362794 (S.D.N.Y. March 6, 2002) .............. 5

*Ross v. FSG PrivatAir, Inc.*,
    No. 03 Civ. 7292 (NRB),
    2004 U.S. Dist. LEXIS 16157, 2004 WL 1837366 (S.D.N.Y. Aug. 17, 2004) ......... 12

**Page(s)**

*Trionic Assocs. v. Harris Corp.*,
    27 F. Supp. 2d 175, 181 (E.D.N.Y. 1998) ....................................................................... 12

*Util. Metal Research v. Generac Power Sys.*,
    No. 02-CV-6205 (FB) (RML),
    2004 U.S. Dist. LEXIS 23314, 2004 WL 2613993 (E.D.N.Y. Nov. 18, 2004) ................. 14

*United Airlines, Inc. v. Ins. Co.*,
    No. 03 Civ. 5189 (RMB),
    2005 U.S. Dist. LEXIS 5485, 2005 WL 756883 (S.D.N.Y. April 1, 2005) ....................... 7

**Other Authorities**

International Swaps Dealers Association, Inc., *User's Guide to the*
    *1992 ISDA Master Agreement* (1993 Ed.) ..................................................................... 9-10

Defendant JPMorgan Chase Bank, N.A., successor-in-interest to JPMorgan Chase Bank, ("JPMC"), respectfully submits this memorandum of law in support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Plaintiff's claim against JPMC for breach of contract fails to state a cause of action upon which relief can be granted because it does not allege that JPMC breached any of its contractual obligations. Plaintiff alleges that, after it defaulted on the parties' contract for the purchase and sale of certain currencies, JPMC miscalculated the amount that would be contractually due between Plaintiff and JPMC as a result of Plaintiff's default. (Complaint, ¶¶ 7-9, 21). Under the terms of the parties' contract, this calculation was to be based on the arithmetic mean of quotations obtained by JPMC from leading market dealers for the price at which JPMC would be able to enter into substitute transactions to replace the defaulted transactions.

JPMC performed that calculation based on quotations it obtained by following the precise language of the contract. The plain and unambiguous language of the parties' agreement states that, upon default of the contract, the non-defaulting party, here JPMC, must "request quotation[s] to the extent reasonably practicable as of the same day and time . . . on or as soon as reasonably practicable after the [termination date]." (Complaint, ¶ 16 & Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"), also attached as Exhibit A to Feldberg Decl.)). JPMC did just that, and Plaintiff makes no allegation to the contrary. The plain and unambiguous language of the parties' agreement further provides that "[t]he day and time as of which those quotations are to be obtained will be selected in good faith." (Complaint, ¶ 16 & Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation")). Again, JPMC did precisely what was required of it under the terms of the parties' agreement, and there are no allegations to

1

the contrary. Because Plaintiff's allegations do not – indeed *cannot* – establish any breach of the parties' agreement, and because Plaintiff has declined an opportunity to amend its Complaint, Plaintiff's Complaint should be dismissed in its entirety with prejudice.

## SUMMARY OF ALLEGATIONS[1]

On or about January 8, 1996, Plaintiff and JPMC entered into an International Swap Dealers Association Master Agreement, including a Schedule and a Credit Support Annex (the "ISDA Master Agreement"), for the purpose of engaging in certain derivative transactions. (Complaint, ¶ 6 & Ex. A: ISDA Master Agreement, Schedule to the ISDA Master Agreement, and Credit Support Annex to the Schedule to the ISDA Master Agreement).

At an unspecified time on January 12, 1998, the Board of Directors of Plaintiff's parent company resolved that it should be placed into provisional liquidation and publicly announced that it was seeking the appointment of a provisional liquidator. (Complaint, ¶¶ 8-9). Plaintiff alleges that, under the terms of the ISDA Master Agreement, this resolution and public announcement caused an Event of Default. (Complaint, ¶¶ 9-10 & Ex. A: ISDA Master Agreement § 5(a)(vii)(5)-(6) (defining "Events of Default") & Schedule to the Master Agreement Part 4(7) (defining "Credit Support Provider")). Further, pursuant to the terms of the parties' agreement, the Event of Default resulted in an "Automatic Early Termination" and an "Early Termination Date." (Complaint, ¶¶ 10-11 & Ex A: ISDA Master Agreement § 6(a) and Schedule to the Master Agreement Part 1(6)). The transactions governed by the parties' contract were now considered "Terminated Transactions." (Complaint, ¶ 12 & Ex. A, ISDA Master Agreement § 14 (defining "Terminated Transaction")).

---

[1] For the purposes of JPMC's motion to dismiss only, JPMC accepts Plaintiff's factual allegations as true.

Plaintiff and JPMC had previously agreed in the ISDA Master Agreement that the "Market Quotation" payment measure and the "Second Method" of payment would determine what amount, if any, would be contractually due between Plaintiff and JPMC after an Early Termination Date had occurred. (Complaint, ¶¶ 12-14 & Ex. A, Schedule to the Master Agreement Part 1(7)(a)-(b)). In selecting the "Market Quotation" measure of payment, Plaintiff and JPMC agreed to rely on "Reference Market-makers," defined in the contract as "four leading dealers in the relevant market," to provide quotes for

> an amount, if any, that would be paid to [the Non-defaulting] party . . . or by [the Non-defaulting] party . . . in consideration of an agreement between such party . . . and the quoting Reference Market-maker to enter into a transaction (the "Replacement Transaction") that would have the effect of preserving for such party the economic equivalent of any payment or delivery by the parties . . . that would, but for the occurrence of the relevant Early Termination Date, have been required after that date.

(Complaint, ¶ 14 & Ex A: ISDA Master Agreement § 14 (defining "Market Quotation")). In selecting the "Second Method," Plaintiff and JPMC agreed, *inter alia*, that the Non-defaulting party would determine the amount, if any, that would be contractually due between Plaintiff and JPMC after an Early Termination Date had occurred. (Complaint, Ex A: ISDA Master Agreement § 6(e)(i)(3) (defining "Second Method and Market Quotation") & § 14 (defining "Settlement Amount")). Upon Plaintiff's default, the calculation process required JPMC to contact at least four Reference Market-makers and obtain quotations. (Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation")). Specifically, the parties' agreement provides:

> The party making the determination (or its agent) will request each Reference Market-maker to provide its quotation ***to the extent reasonably practicable as of the same day and time*** (without regard to different time zones) ***on or as soon as reasonably practicable after the relevant Early Termination Date.*** The ***day and time as of***

3

> ***which those quotations are to be obtained will be selected in good faith*** by the party obliged to make a determination under Section 6(e), and, if each party is so obliged, after consultation with the other.

(Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation") (emphasis supplied)). Despite the foregoing language, Plaintiff alleges that "the Reference Market-makers were required to provide their quotations as of January 12, 1998," and that by basing its calculations on quotations as of January 13, 14 and 15, 1998, JPMC breached the parties' agreement. (Complaint, ¶¶ 16, 31).

Plaintiff makes no allegation, however, that JPMC did not "request each Reference Market-maker to provide its quotation to the extent reasonably practicable as of the same day and time." Likewise, Plaintiff makes no allegation that JPMC did not make its request to each Reference Market-maker to provide its quotation "on or soon as reasonably practicable after the relevant Early Termination Date." Indeed, Plaintiff makes no allegation that JPMC became aware of the Event of Default and Automatic Early Termination at a time during which it would have been possible to obtain quotations as of January 12, 1998, the Early Termination Date. Likewise, Plaintiff makes no allegation that JPMC did not "select[] in good faith . . . the day and time as of which those quotations [were] obtained."

Without any factual allegations supporting a claim for breach, Plaintiff simply concludes that JPMC breached the parties' agreement. (Complaint, ¶¶ 28-32). Because nothing in the ISDA Master Agreement required JPMC to calculate the net amount due as of January 12, 1998, there is no merit to the allegation that JPMC breached the parties' agreement.

4

## ARGUMENT

On a Rule 12(b)(6) motion to dismiss, a court typically must accept well-pleaded facts alleged in the complaint as true and construe all reasonable inferences in favor of the plaintiff. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 508 n.1, 152 L. Ed. 2d 1, 122 S. Ct. 992 (2002); *Lentell v. Merrill Lynch & Co.*, 396 F.3d 161, 174-75 (2d Cir. 2005); *Cohen v. United States Fid. & Guar. Co.*, No. 04 Civ. 5921 (RMB) (MHD), 2005 U.S. Dist. LEXIS 8015, at *5, 2005 WL 1036097, at *2 (S.D.N.Y. May 4, 2005). However, "conclusions of law or unwarranted deductions of fact are not admitted." *Lentell*, 396 F.3d at 174-175; *Cohen*, 2005 U.S. Dist. LEXIS 8015, at *5-6, 2005 WL 1036097, at *2 ("A complaint which consists of conclusory allegations unsupported by factual assertions fails even the liberal standard of Rule 12(b)(6)."). Where a plaintiff fails to plead adequately the basic elements of a cause of action, the complaint must be dismissed. *Official Comm. of Unsecured Creditors v. Donaldson, Lufkin & Jenrette Sec. Corp.*, No. 00 Civ. 8688 (WHP), 2002 U.S. Dist. LEXIS 3747, at *11, 2002 WL 362794, at *4 (S.D.N.Y. March 6, 2002).

### THE AMENDED COMPLAINT SHOULD BE DISMISSED BECAUSE PLAINTIFF FAILS TO ALLEGE FACTS ESTABLISHING ANY BREACH BY JPMORGAN CHASE BANK, N.A.

Plaintiff and JPMC's agreement is unambiguous and the plain language of the contract provides that, upon the occurrence of an Early Termination Date, JPMC was required to request quotations "as soon as reasonably practicable" as of a day and time selected in "good faith." Plaintiff alleges no facts showing that JPMC breached any of these unambiguous terms of the parties' agreement. Instead, Plaintiff simply concludes that "the Reference Market-makers were required to provide their quotations as of January 12, 1998," a statement that ignores the plain language of the contract. As Plaintiff makes no allegation that JPMC breached the unambiguous terms of their agreement, Plaintiff's Complaint should be dismissed.

### A.     The Terms of the Parties' Agreement are Unambiguous

As the terms of the ISDA Master Agreement are unambiguous, Plaintiff's and JPMC's respective obligations are governed by the plain meaning of the terms set forth in the parties' agreement.

Under New York law[2] "the initial interpretation of a contract is a matter of law for the court to decide." *Alexander & Alexander Servs., Inc. v. These Certain Underwriters at Lloyd's*, 136 F.3d 82, 86 (2d Cir. 1998) (citations omitted); *New Paradigm Software Corp. v. New Era of Networks, Inc.*, No. 99 Civ. 12409 (RMB) (AJP), 2002 U.S. Dist. LEXIS 23753, at *15, 2002 WL 31749396, at *5 (S.D.N.Y. Dec. 9, 2002) (same). "Included in this initial interpretation is the threshold question of whether the terms of the contract are ambiguous." *Alexander*, 136 F.3d at 86. A contract is ambiguous if "it is reasonably susceptible of more than one interpretation, and a court makes this determination by reference to the contract alone." *Banque Arabe Et Internationale D'Investissement v. Maryland Nat'l Bank*, 57 F.3d 146, 152 (2d Cir. 1995) (internal quotations and citations omitted); *see also United Airlines, Inc. v. Ins. Co.*, No. 03 Civ. 5189 (RMB), 2005 U.S. Dist. LEXIS 5485, at *10, 2005 WL 756883, at *3 (S.D.N.Y. April 1, 2005); *Chimart Assocs. v. Paul*, 66 N.Y.2d 570, 572-73, 489 N.E.2d 231, 233, 498 N.Y.S.2d 344, 346 (N.Y. 1986). Conversely, "contract language is not ambiguous if it has a definite and precise meaning, unattended by danger of misconception in the purport of the [contract] itself, and concerning which there is no reasonable basis for a difference of opinion."

---

[2] The parties have agreed that New York substantive law governs the ISDA Master Agreement. (Complaint, ¶ 26 & Ex. A: ISDA Master Agreement §13(b)(i) & Schedule to the Master Agreement Part 4(1)). *See New Paradigm Software Corp. v. New Era of Networks, Inc.*, No. 99 Civ. 12409 (RMB) (AJP), 2002 U.S. Dist. LEXIS 23753, at *13-14, 2002 WL 31749396, at *3 (S.D.N.Y. Dec. 9, 2002) ("where the parties have agreed to the application of the forum law, their consent concludes the choice of law inquiry.") (internal quotations and citations omitted).

6

*Curry Rd. v. K Mart Corp.*, 893 F.2d 509, 511 (2d Cir. 1990); *United Airlines*, 2005 U.S. Dist. LEXIS 5485, at *10-11, 2005 WL 756883, at *3 (same).

Here, the ISDA Master Agreement, as agreed to by Plaintiff and JPMC, clearly sets forth what a Non-defaulting Party, here JPMC, was required to do upon the occurrence of an Early Termination:

> The party making the determination (or its agent) will request each Reference Market-maker to provide its quotation ***to the extent reasonably practicable as of the same day and time*** (without regard to different time zones) ***on or as soon as reasonably practicable after the relevant Early Termination Date***. The ***day and time as of which those quotations are to be obtained will be selected in good faith*** by the party obliged to make a determination under Section 6(e), and, if each party is so obliged, after consultation with the other.

(Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation") (emphasis supplied)). Thus, based on the foregoing terms, the contract required JPMC to request Reference Market-makers each to provide quotations, and that: (1) the requests to the Reference Market-makers, with respect to each Terminated Transaction (or each group of Terminated Transactions), shall be for quotations "to the extent reasonably practicable as of the same day and time," as opposed to requesting quotations to be provided as of different dates and times; and (2) the requests to the Reference Market-makers for such quotes shall be made "on or as soon as reasonably practicable after the relevant Early Termination Date." (Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation")).

Further, contrary to Plaintiff's conclusory allegations, under the terms of the ISDA Master Agreement, the quotations sought with respect to each Terminated Transaction need not be as of the Early Termination Date. Instead, the language of the contract expressly states that the quotations with respect to each Terminated Transaction may be obtained as of any

7

day and time so long as JPMC "select[s] in good faith" that day and time. By providing JPMC the discretion to "select[] in good faith . . . the day and time as of which those quotations are to be obtained," the contract recognizes that no single date is the only proper date as of which to determine quotations, let alone that the only proper date is the Early Termination Date. In sum, nowhere does the ISDA Master Agreement provide that quotations are "required" to be as of the Early Termination Date.

### 1.     JPMC is Required to Request Quotations

The definition of "Market Quotation" in Section 14 of the ISDA Master Agreement states that the party making the determination, here JPMC, is to "request each Reference Market-maker to provide its quotation to the extent reasonably practicable as of the same day and time (without regard to different time zones) on or as soon as reasonably practicable after the relevant early termination date." (Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation")). The distinctive use of the phrase "as of" in one context as opposed to the use of "on" in another, is the key to understanding the meaning of this passage, as described below.

#### a.     Valuation Date to be "As of the Same Day and Time"

The plain meaning of this phrase requires that the quotations with respect to a Terminated Transaction be requested to be made as of the same day and time, to the extent reasonably practicable. The practical reason for this provision is obvious: if a Non-defaulting Party requested quotations from four Reference Market-makers, but instructed each Reference Market-maker to use a different valuation day and/or time for its quotation, the resulting quotations provided could vary due to timing differences, and the quotations would not be sufficiently comparable to be used in calculating a Market Quotation, which is the "arithmetic mean of the quotations" obtained from the Reference-Market-makers. (Complaint, Ex. A, ISDA

8

*User's Guide to the 1992 ISDA Master Agreement*, p. 24-25 (1993 Ed.)). These practical difficulties can easily arise when Automatic Early Termination applies, as was the case here. The User's Guide explains these practical concerns as follows:

> The primary disadvantage of Automatic Early Termination is that an Early Termination Date could occur without the knowledge of the Non-defaulting Party and, prior to the discovery by the Non-defaulting Party of the occurrence of such a termination, the relevant market could have moved significantly from its position on the Early Termination Date. To mitigate the consequences for a Non-defaulting Party, the 1992 Agreements determine payments on early termination as of the Early Termination Date ***or as soon thereafter as is reasonably practicable***.

(Feldberg Decl., Ex. B: *User's Guide to the 1992 ISDA Master Agreement*, p. 21 (emphasis supplied)). A similar window of time is permitted in cases where a stock (or any other item of fluctuating value) is wrongfully sold, converted or not purchased, such as was the case in *Halifax Fund, L.P. v. MRV Communs.*, No. 00 Civ. 4878 (HB), 2001 U.S. Dist. LEXIS 20933, 2001 WL 162261 (S.D.N.Y. Dec. 18, 2001), *aff'd* 54 Fed. Appx. 718 (2d Cir. 2003). There, this Court noted that the purpose for providing a window of time during which a non-defaulting party may obtain the cost of cover is "to provide a fair valuation of stocks, by allocating the risk of market fluctuation to the breaching party and to redress the unfairness that would result from allowing the party in the wrong to dictate the timing of the innocent party's trading and thus the recoverable damages." *Halifax*, 2001 U.S. Dist. LEXIS 20933, at *16-17, 2001 WL 162261, at *5 (internal citations and quotations omitted). Likewise, here, the ISDA Master Agreement recognizes this same rationale and provides for a window of time during which JPMC was to request the quotations.

Master Agreement, § 14 (defining "Market Quotation"). Thus, the ISDA Master Agreement provides that each Reference Market-maker for a single Terminated Transaction shall be requested to provide a quotation "to the extent reasonably practicable as of the same day and time." Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation")).[3] This key "as of" language, referring to the valuation day and time, is again used in the sentence requiring a good faith choice of date by the determining party, as discussed in Point 2 below.

### b. Requests Made "On or as Reasonably Practicable after the Relevant Early Termination Date"

The plain meaning of this phrase requires that the requests for any given Terminated Transaction or group of Terminated Transactions be made "on or as reasonably practicable after the relevant early termination date." The practical reason for this provision is likewise obvious: for a variety of reasons the Non-defaulting Party may not have sufficient time to request a quotation on the Early Termination Date. Indeed, the "User's Guide to the 1992 ISDA Master Agreement," published by the International Swap Dealers Association, now known as the International Swaps and Derivatives Association ("ISDA"), notes that the ISDA Master Agreement "acknowledges the practical difficulties that may arise in obtaining quotations from Reference Market-makers on the relevant Early Termination Date and, accordingly, provide[d] that a party making the determination of Market Quotation may request quotations 'on or as soon as reasonably practicable after the relevant Early Termination Date.'" (Feldberg Decl., Ex. B:

---

[3] This requirement, however, does not apply so that the same day and time must be used for all Terminated Transactions. (Complaint, Ex. A, ISDA Master Agreement, § 14 (noting that "Market Quotation" refers to a quotation obtained to enter into a Replacement Transaction "with respect to one or more Terminated Transactions" and not *all* Terminated Transactions under any given ISDA Master Agreement)). This capacity for variability is another indicator of the fact that the Early Termination Date is not necessarily the "as of" date for Market Quotations.

9

## 2. Quotations to be Obtained as of a Date Selected in Good Faith by JPMC

The clearest indication that quotations are not "required" to be made as of the Early Termination Date but instead may be properly made as of a later date is the provision that JPMC is *to select* the date as of which quotations are to be obtained for a Terminated Transaction. Specifically, the definition of "Market Quotation" provides that: "***The day and time as of which*** those quotations are to be obtained will be *selected* in good faith by the party obliged to make a determination under Section 6(e)." (Complaint, Ex. A, ISDA Master Agreement, § 14 (defining "Market Quotation") (emphasis supplied)). Contrary to Plaintiff's conclusory statement that "the Reference Market-makers were *required* to provide their quotations as of January 12, 1998" (Complaint, ¶ 16 (emphasis supplied)), the contract unambiguously provides that JPMC was to select, in good faith, the valuation date, i.e., the "day and time as of which" the Reference Market-makers were to provide quotations.

In its May 23, 2005, letter to the Court, Plaintiff incorrectly interprets this sentence to mean that the time within which JPMC is required to request quotations must be selected in good faith. (Feldberg Decl., Ex. C). Plaintiff's interpretation, however, renders the phrase discussed above in Point 1.b superfluous. If this second sentence is interpreted to refer to the time within which JPMC must request a quotation, then the first sentence, stating that the quotation must be to requested "on or as soon as reasonably practicable," is redundant. Surely the two sentences do not both refer to the timing of JPMC's request for quotations. Instead, only the first sentence refers to the timing of JPMC's *request for quotations*; the second sentence refers to the *valuation day and time for the quotations*.

In any event, even if, as Plaintiff suggests, the "good faith" requirement applies to the timing of JPMC's requests for quotations (which it does not), this sentence still does not

11

require JPMC to obtain quotations as of the Early Termination Date, but instead sets forth a good faith window of time in which JPMC was permitted to do so.

Thus, under the terms of the contract, the quotations obtained with respect to each Terminated Transaction (or group of Terminated Transactions) were not "required" to be as of the Early Termination Date, but instead could be as of an alternative date subsequent to the Early Termination Date, so long as the day and time were selected in good faith.

### B.  The Complaint Fails to Allege Any Breach by JPMC

Plaintiff's claim for breach of contract fails because Plaintiff does not allege any facts indicating a breach by JPMC. Where no facts indicating a breach are alleged, no claim for breach of contract may lie. *See Kaufman v. Guest Capital, L.L.C.*, No. 03 Civ. 1509 (RJH), 2005 U.S. Dist. LEXIS 1033, at *46, 2005 WL 167602, at *13 (S.D.N.Y. Jan. 25, 2005) (holding that "[n]o reasonable juror could conclude that GC's failure to provide a condensed schedule of investments constituted a breach of contract where no such guarantee was made," and that "this Court cannot rewrite the [parties' agreement] and add words that the parties themselves did not include in their agreement."); *Ross v. FSG PrivatAir, Inc.*, No. 03 Civ. 7292 (NRB), 2004 U.S. Dist. LEXIS 16157, at *11-17, 28, 2004 WL 1837366, at *3-5, 8 (S.D.N.Y. Aug. 17, 2004) (dismissing breach of contract claim where terms of parties' agreement did not require defendant to undertake the actions plaintiff alleged that defendant failed to take); *Trionic Assocs. v. Harris Corp.*, 27 F. Supp. 2d 175, 181 (E.D.N.Y. 1998) (where contract "expressly states that either party had the right to terminate the contract for convenience 'at any time upon 30 days written notice,' defendant committed no breach when it terminated the contract).

Here, Plaintiff makes no allegation that: (1) JPMC did not request that quotations be provided "to the extent reasonably practicable as of the same day and time"; (2) JPMC did not make its request for quotations "on or as soon as reasonably practicable after the relevant Early

Termination Date"; or (3) JPMC did not "select[] in good faith . . . [t]he day and time as of which those quotations are to be obtained."

At most, Plaintiff alleges (in a conclusory fashion and without any factual support), that "[t]he Reference Market-makers were able to provide their market quotation on January 12, 1998." (Complaint, ¶ 18). That allegation – which says no more than that the Reference Market-makers were open for business on January 12, 1998 – is irrelevant to the issue at hand. Whether the markets were open and quotes were available on January 12, 1998 (as they are on every trading day) is not determinative of the standard to be met here, which is whether it was "reasonably practicable" for JPMC to make a request for quotes at that time. Plaintiff notably does not allege that it was reasonably practicable for JPMC to have completed all of the following necessary steps before the close of the market on January 12, 1998: (1) learn of the Early Termination Date; (2) determine what positions JPMC then had open with Plaintiff; (3) select appropriate Reference Market-makers under the terms of the ISDA Master Agreement; (4) assemble quotation requests; and (5) submit those requests to Reference Market-makers.

Rather, all Plaintiff alleges is that, sometime on January 12, 1998, the Board of Directors of Plaintiff's parent company resolved that it should be placed into provisional liquidation and then publicly announced that it was seeking the appointment of a provisional liquidator (Complaint, ¶ 8). Plaintiff does not allege the time that the resolution was passed or the public announcement was made, or even that either event occurred during market hours. More importantly, Plaintiff makes no allegation that JPMC even became aware of the Event of Default at a time during which it would have been possible to request quotations from the Reference Market-makers on January 12, 1998.

13

Instead, Plaintiff simply concludes – incorrectly – that all quotations were "required" to be provided as of January 12, 1998, the Early Termination Date (Complaint, ¶ 16). Plaintiff's conclusory statements are not supported by any factual allegations, or by the terms of the contract. As explained above, the contract did not require that quotations be obtained as of the Early Termination Date. Thus, JPMC's use of quotations as of a subsequent date is not a breach.

Plaintiff does not allege that JPMC did not make requests for quotations "as soon as reasonably practicable after the Early Termination Date" or that JPMC failed to act in good faith in selecting the dates as of which the quotations were to be provided. Plaintiff simply alleges that JPMC "incorrectly" based its calculation on quotations from January 13, 14 and 15, 1998, and such "incorrect" calculation constituted a breach of the parties' agreement. (Complaint, ¶¶ 16, 31). As JPMC committed no error in basing its calculation on quotations from January 13, 14 and 15, 1998, Plaintiff's claim for breach of contract should be dismissed.

### C.     Dismissal With Prejudice

Plaintiff's Complaint should be dismissed with prejudice and without leave to amend the Complaint. *See Util. Metal Research v. Generac Power Sys.*, No. 02-CV-6205 (FB) (RML), 2004 U.S. Dist. LEXIS 23314, at *20-21, 2004 WL 2613993, at *7 (E.D.N.Y. Nov. 18, 2004) (dismissing amended complaint with prejudice where plaintiffs had not requested leave to amend and where plaintiffs already had an opportunity to replead); *Faulkner v. Verizon Communics., Inc.*, 189 F. Supp. 2d 161, 174 (S.D.N.Y. 2002) (dismissing amended complaint with prejudice where plaintiffs had not requested leave to amend and had already been allowed an opportunity to replead).

Here, Plaintiff has already declined the Court's invitation to amend its Complaint, and further indicated that it understands that any dismissal on the pleadings would be with prejudice. (Feldberg Decl., Ex. D).[4]

## CONCLUSION

For the above-stated reasons, Plaintiff's claim against JPMC for breach of contract cannot be sustained as a matter of law. Accordingly, JPMorgan Chase Bank, N.A. respectfully requests that the Court dismiss the amended complaint, with prejudice, as against it and that leave to amend be denied.

Dated: New York, New York
       June 17, 2005

Respectfully submitted,

ALLEN & OVERY LLP

By: _____
    Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendant*
   *JPMorgan Chase Bank, N.A.,*
   *successor-in-interest to*
   *JPMorgan Chase Bank*

---

[4] Moreover, this Complaint is the second pleading that Plaintiff has filed against JPMC regarding the same transaction. In 2004, Plaintiff filed a Writ of Summons and Statement of Claim in Hong Kong against JPMC, alleging the same facts and the same breach of the same 1992 ISDA Master Agreement. (Feldberg Decl., Ex. E). The Hong Kong action was stayed in favor of a proceeding in the Southern District of New York. (Feldberg Decl., Ex. F). With this Complaint, filed over sixteen months after its first filing against JPMC, Plaintiff attempts to assert the same breach of contract claim against JPMC, again alleging no facts sufficient to show any breach by JPMC of the parties' agreement. As Plaintiff has had ample time to carefully craft its complaint against JPMC – and yet failed to allege any cognizable breach on this, its second attempt – this Court should dismiss Plaintiff's Complaint with prejudice.