UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
                                                        :

Peregrine Fixed Income Limited (in liquidation),    :    No. 05-CV-4351 (RMB)
                                                        :    ECF Case
                          Plaintiff,                        :

                   -against-                           :

JP Morgan Chase Bank (formerly known as The Chase   :
Manhattan Bank and having merged with Morgan       :
Guaranty Trust Company of New York),                  :

                        Defendant.                     :
------------------------------------------------------------------- x

**REPLY MEMORANDUM OF LAW BY JPMORGAN CHASE BANK, N.A.
IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT
<u>FOR FAILURE TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED</u>**

ALLEN & OVERY LLP
Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York  10020
Tel: (212) 610-6300

*Attorneys for Defendant*
  *JPMorgan Chase Bank, N.A.,*
  *successor-in-interest to*
  *JPMorgan Chase Bank*

Defendant JPMorgan Chase Bank, N.A., successor-in-interest to JPMorgan Chase Bank, ("JPMC"), respectfully submits this reply memorandum of law in further support of its motion, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, to dismiss the Complaint for failure to state a claim upon which relief can be granted.

## PRELIMINARY STATEMENT

Despite Plaintiff's attempt to assert additional unpled facts in the Memorandum of Peregrine Fixed Income Limited in Opposition to Motion to Dismiss of JPMorgan Chase Bank ("Opposition Brief")[1] and accompanying Declaration by Simon Charles Copley ("Copley Declaration"), Plaintiff's Complaint still fails to establish any breach by JPMC.

The contract plainly provides that "[t]he day and time as of which . . . quotations are to be obtained will be selected in good faith." (Complaint, ¶ 16 & Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"), also attached as Exhibit A to Feldberg Decl.). The Complaint does not allege that JPMC failed to act in good faith and Plaintiff declined the Court's invitation to amend the Complaint. Now, in apparent recognition of the defectiveness of the Complaint, Plaintiff attempts to add new factual allegations in the Opposition Brief and Copley Declaration. This effort is both inappropriate and unavailing. The fact remains that Plaintiff does not allege anywhere that JPMC failed to act in good faith. Likewise, Plaintiff does not dispute that JPMC requested quotations "on or as soon as reasonably practicable after the Early Termination Date." (Complaint, ¶ 16 & Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"). Thus, Plaintiff cannot maintain a claim for breach of contract.

---

[1] References to the "Opposition Brief" here are made to the pagination as it appears in the corrected brief Plaintiff filed electronically at 6:35pm on July 8, 2005.

1

Plaintiff's entire case is premised on an incorrect and illogical interpretation of the plain and unambiguous meaning of the contract language (supported by no authority, legal or otherwise), which would require JPMC to obtain retroactive quotations. Plaintiff then simply makes the unsupported assertion that "historical, or retroactive pricing" was available. (Opposition Brief, p. 6, 8). Regardless of whether retroactive pricing was or was not available, Plaintiff is bound by the language of the contract and its Complaint. JPMC was obligated to timely request quotations and to select in good faith the valuation date. Plaintiff does not allege that JPMC failed to do so.

In any event, Plaintiff's newly-asserted claim of "retroactive pricing" flies in the face of logic. As evidenced by the definition of "Replacement Transaction," the purpose and essence of the Market Quotation methodology is to determine the cost of cover for JPMC, which cost of cover would necessarily be calculated on current, not retroactive, quotations.

The Complaint fails to allege any facts supporting a claim against JPMC for breach of contract and therefore should be dismissed in its entirety with prejudice.

## ARGUMENT

### A.   Plaintiff Fails to Allege Any Breach by JPMC

The plain language of the contract provides that, upon the occurrence of an Early Termination Date, JPMC was required to request quotations "as soon as reasonably practicable," and that ***"the day and time as of which those quotations are to be obtained will be selected in good faith"*** by JPMC. (Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market

2

Quotation") (emphasis supplied)).[2] Nothing in Plaintiff's Complaint alleges that JPMC breached any of these unambiguous terms of the parties' agreement.

The Complaint simply fails to allege any breach by JPMC of the plain and unambiguous meaning of the contract's terms. The Complaint makes no allegation that JPMC did not request the quotations "as soon as reasonably practicable," and likewise makes no allegation that JPMC did not act in good faith. Indeed, at the May 31, 2005, conference before the Court, counsel for Plaintiff acknowledged that Plaintiff's Complaint contained no allegations of bad faith, and declined the Court's invitation to amend the Complaint so as to include allegations of bad faith. As a result, the Complaint remains devoid of any allegation of wrongdoing by JPMC.

Plaintiff's interpretation of the contract language is wrong. As explained in JPMC's moving brief, the sentence stating that "[t]he party making the determination (or its agent) will request each Reference Market-maker to provide its quotation . . . on or as soon as reasonably practicable after the relevant Early Termination Date" refers to the timing of JPMC's request for quotations. This interpretation is supported by the plain language of the contract and by the "User's Guide to the 1992 ISDA Master Agreement," published by the International Swap Dealers Association, now known as the International Swaps and Derivatives Association

---

[2] Specifically, the contract provides:
> The party making the determination (or its agent) will request each Reference Market-maker to provide its quotation *to the extent reasonably practicable as of the same day and time* (without regard to different time zones) *on or as soon as reasonably practicable after the relevant Early Termination Date*. The *day and time as of which those quotations are to be obtained will be selected in good faith* by the party obliged to make a determination under Section 6(e), and, if each party is so obliged, after consultation with the other.

(ISDA Master Agreement, § 14 (defining "Market Quotation") (emphasis supplied).

3

("ISDA"), the publisher of the definition at issue, which Plaintiff wholly ignores. The User's Guide "acknowledges the practical difficulties that may arise in obtaining quotations from Reference Market-makers on the relevant Early Termination Date and, accordingly, provides that a party making the determination of Market Quotation may *request quotations* 'on or as soon as reasonably practicable after the relevant Early Termination Date.'" (Feldberg Decl., Ex. B: *User's Guide to the 1992 ISDA Master Agreement*, p. 24-25 (1993 Ed.) (emphasis supplied)). Plaintiff neither alleges that JPMC did not timely request quotations, nor offers authority to support its contrary interpretation of the contract.

The contract also provides that JPMC request that each of the four quotations be provided "to the extent reasonably practicable as of the same day and time," such that, for any one transaction or group of transactions, JPMC would end up with four quotations as of the same day and time. (Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"). As explained in JPMC's moving brief, this requirement ensures that the quotations obtained are sufficiently comparable to be used in calculating a Market Quotation, which is the "arithmetic mean of the quotations" obtained from the Reference Market-makers. (Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"). Here again, Plaintiff does not allege that JPMC failed to request quotations for any terminated transaction or group of terminated transactions "as of the same day and time."

Plaintiff incorrectly states that "[a]ccording to JPMorgan, if the 'request' was made in 'good faith,' the valuation date, or 'as of' date, of the quotation was unimportant." (Opposition Brief, p. 3). JPMC, however, made no such assertion in its moving brief. To the contrary, as explained in JPMC's moving brief, the plain and unambiguous language of the contract requires that a request be made "as soon as reasonably practicable," and that a valuation

4

date be "selected in good faith." (Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation"). The Complaint does not allege that JPMC failed to do either.

Plaintiff fails to allege any breach by JPMC, and nothing in Plaintiff's Opposition Brief or the Copley Declaration can remedy this dispositive defect.[3] The arguments that Plaintiff does make are irrelevant and, in any event, simply wrong.

### B. The Court Should Reject Plaintiff's Attempt to Amend the Complaint

Plaintiff's attempt now to assert that JPMC committed wrongful acts or that JPMC may have "breached the ISDA Master Agreement in another way" (Opposition Brief, p. 9) are wholly inappropriate and should be disregarded in their entirety.

"It is axiomatic that the Complaint cannot be amended by the briefs in opposition to a motion to dismiss." *O'Brien v. Nat'l Prop. Analysts Partners*, 719 F. Supp. 222, 229 (S.D.N.Y. 1989) (where complaint failed to allege facts showing scienter in support of fraud claim, dismissing plaintiff's assertions made in its opposition brief of defendant's knowledge of the purported fraud); *Endovasc Ltd. v. J.P. Turner & Co., LLC*, No. 02 Civ. 7313 (LAP), 2004 U.S. Dist. LEXIS 5075, at *42-43, 2004 WL 634171, at *12 (S.D.N.Y. March 31, 2004) (where plaintiff failed to allege that plaintiff was a market participant or facts showing plaintiff's reliance on manipulation by the defendants, holding that plaintiff's "attempt to cite to exhibits attached to affidavits submitted by defendants is an impermissible attempt to amend its Complaint in its briefs."); *Reading Int'l, Inc. v. Oaktree Capital Mgmt. LLC*, 317 F. Supp. 2d 301, 318 n.9 (S.D.N.Y. 2003) (where plaintiffs raised an allegation for the first time in their

---

[3] Even if the Court were to accept the statements made in the Copley Declaration, Copley makes no assertion that JPMC failed to act in good faith, that JPMC failed to timely request quotations, or that JPMC did not request that the quotations be "to the extent reasonably practicable as of the same day and time."

5

opposition papers, holding that "plaintiffs may not amend their complaint through their opposition brief.").

Here, as Plaintiff has already declined the Court's invitation to amend the Complaint, and further indicated that it understood that any dismissal on the pleadings would be with prejudice (Feldberg Decl., Ex. D), Plaintiff's attempts, in the Opposition Brief and in the Copley Declaration, to assert that market quotations were available as of January 12, 1998, and that JPMC "intentionally select[ed] valuation dates . . . that maximized its profits at [Plaintiff's] expense," or otherwise "fail[ed] to obtain proper quotations in accordance with the Market Quotation measure pursuant to the terms of the ISDA Master Agreement," (Copley Declaration, ¶¶ 4-5), are simply irrelevant. Plaintiff's attempt now to plead, in the alternative, that JPMC should have obtained quotations as of January 13, 1998 (Opposition Brief, p. 8), only underscores the weakness of Plaintiff's Complaint and should likewise be disregarded by the Court. Lastly, Plaintiff's assertion that "[d]iscovery may yield evidence of further wrongful behavior by JPMorgan" (Opposition Brief, p. 9) is beside the point. Plaintiff failed to allege any wrongdoing by JPMC and specifically declined the Court's invitation to amend its Complaint to include any such allegations.

### C. The Purpose of Market Quotation Methodology Undermines Plaintiff's Arguments

Plaintiff's arguments regarding the availability of retroactive pricing were not alleged in the Complaint and therefore should be disregarded. Even if accepted, these arguments are undermined by the purpose and effect of the Market Quotation methodology.

The availability of a Replacement Transaction as a measuring device is designed to preserve an economic equivalent of a stream of payments for the non-defaulting party – here JPMC. The ISDA Master Agreement defines "Market Quotation" as follows:

6

> "Market Quotation" means, with respect to one or more Terminated Transactions and *a party making the determination* [here JPMC], an amount determined on the basis of quotations from Reference Market-makers. Each quotation will be for an amount, if any, that would be paid to *such party* . . . or by *such party* . . . in consideration of an agreement between *such party* . . . and the quoting Reference Market-maker to enter into a transaction (the "Replacement Transaction") that would have the effect of preserving for *such party the economic equivalent of any payment or delivery by the parties*.

(Complaint, Ex. A: ISDA Master Agreement, § 14 (defining "Market Quotation") (emphasis added)). As evidenced by the definition of "Replacement Transaction," the purpose and essence of the Market Quotation methodology is to determine the cost of cover for JPMC, the non-defaulting party that is making the Market Quotation determination. Plaintiff's efforts to mischaracterize the purpose of "Replacement Transaction" as a transaction "that would have the effect of preserving *for [PFIL]* the economic equivalent of any payment . . . by [JPMorgan]" (Opposition Brief, p. 4 (emphasis supplied)) is simply wrong. Instead, JPMC's obligation under the terms of the contract was to obtain quotations for prices at which JPMC could enter into a Replacement Transaction so as to preserve *JPMC*'s economic status quo.

The cost of cover for JPMC would be calculated by determining the price at which JPMC could enter a substitute transaction with another entity, which is necessarily based on current, not retroactive, quotations. Plaintiff's unsupported argument that "historical, or retroactive pricing" was available (Opposition Brief, p. 6) ignores both the language of the contract and the practical aspects of the process of obtaining quotations and calculating a Market Quotation. Because any "Replacement Transaction" would be entered into with a third-party wholly unrelated to the parties to the contract, logic and standard market practice dictate that any such new, substitute transaction would be governed by the then-current market price.

Moreover, contrary to Plaintiff's assertion, neither JPMC's moving brief nor the ISDA Master Agreement supports the idea that "historical, or retroactive, pricing is required" or

7

even possible for that matter. (Opposition Brief, p. 5). The text quoted by Plaintiff (Opposition Brief, pp. 5-6 & n.6) says nothing about obtaining *retroactive* quotes, but instead simply indicates that, when requesting quotations from various Reference Market-makers, the requests should be made as of the same day and time, to the extent reasonably practicable. This helps ensure that the four quotations obtained are comparable. It does not, however, address the day "as of" which those quotations are to be obtained.

Indeed, Copley's own statement does not even go so far as to say that quotations may be obtained retroactively. Copley simply states that "quotations were available and could have been obtained as of January 12, 1998." (Copley Declaration, ¶ 3). Notably, Copley neither states that quotations as of January 12, 1998 could have been obtained any time after January 12, 1998, nor does he state that, in all of his "experience and knowledge of the derivative financial markets," he had ever once heard of or had ever seen a retroactive quote. Moreover, Copley's statement offers no support for Plaintiff's argument here because it does not state that it was possible for *JPMC, at the time that JPMC was notified of Plaintiff's default*, to obtain quotations as of January 12, 1998, as to which a third party would be willing to enter into a transaction with JPMC.

## **CONCLUSION**

For the above-stated reasons, Plaintiff's claim against JPMC for breach of contract cannot be sustained as a matter of law. Accordingly, JPMorgan Chase Bank, N.A. respectfully requests that the Court dismiss the amended complaint, with prejudice, as against it and that leave to amend be denied.

Dated: New York, New York
      July 22, 2005

                                      Respectfully submitted,

                                      ALLEN & OVERY LLP

                                      By:   /s/_____
                                               Michael S. Feldberg (MF-3974)
                                    1221 Avenue of the Americas
                                    New York, New York 10020

                                    *Attorneys for Defendant*
                                        *JPMorgan Chase Bank, N.A.,*
                                        *successor-in-interest to*
                                        *JPMorgan Chase Bank*