**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------------- x
:
Peregrine Fixed Income Limited (in liquidation),   :   Case No. 05-CV-4351 (RMB)
:
Plaintiff,   :
:
-against-   :
:
JP Morgan Chase Bank (formerly known as The Chase   :
Manhattan Bank and having merged with Morgan   :
Guaranty Trust Company of New York),   :
:
Defendant.   :
---------------------------------------------------------------------- x

**MEMORANDUM OF LAW BY JPMORGAN CHASE BANK IN SUPPORT OF
MOTION FOR LEAVE TO AMEND ANSWER AND FILE COUNTERCLAIMS**

ALLEN & OVERY LLP
Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York  10020
Tel: (212) 610-6300

*Attorneys for Defendant
 JPMorgan Chase Bank*

# **TABLE OF CONTENTS**

Table of Authorities ................................................................................................................. ii

Statement of Factual Background and Procedural History ............................................................... 1

Argument ........................................................................................................................................... 6

    A.    JPMC's Proposed Counterclaims are Compulsory ....................................................... 8

    B.    Inclusion of JPMC's Proposed Amendments Will Not Prejudice Plaintiff ............... 8

    C.    JPMC's Proposed Amendments Present Meritorious Claims .................................... 9

        1.    Attorneys Fees................................................................................................ 10

        2.    Set-Off............................................................................................................ 10

        3.    Failure of Condition Precedent ..................................................................... 12

    D.    Plaintiff's Proposed Amendments Should be Rejected ............................................ 12

Conclusion ....................................................................................................................................... 14

# TABLE OF AUTHORITIES

**Cases**

*El Comercio Exterior de Cuba v. First Nat'l City Bank*,
    744 F.2d 237 (2d Cir. 1984) ................................................................................... 7

*Fashion Fragrances & Cosmetics, Ltd. v. Croddick*, No. 02 Civ. 6294 (LAP) (MHD),
    2004 U.S. Dist. LEXIS 8796 (S.D.N.Y. May 17, 2004) ................................... 7, 9

*Foman v. Davis*, 371 U.S. 178 (1962) ................................................................................. 7

*Gillette Co. v. Philips Oral Healthcare, Inc.*, No. 99 Civ. 0807 (LAP) (DF),
    2001 U.S. Dist. LEXIS 18624 (S.D.N.Y. Nov. 15, 2001) .................................... 7

*Min Jin v. Metro. Life Ins. Co.*, 295 F.3d 335 (2d Cir. 2002) ............................................ 7

*Veritas-Scalable Inv. Prods. Fund, LLC v. FB Foods, Inc.*, No. 3:04 CV 1199 (JBA),
    2006 U.S. Dist. LEXIS 51085 (S.D.N.Y. July 26, 2006) ..................................... 9

*Woodford v. Community Action Agency of Greene County, Inc.*,
    239 F.3d 517, 526 (2d Cir. 2001) ......................................................................... 9

**Statutes**

11 U.S.C. Section 304 (2000) .............................................................................................. 3

12 U.S.C. § 215(e) (2006) .................................................................................................. 11

12 U.S.C. § 215a(e) (2006) ................................................................................................ 11

Fed. R. Civ. P. 9(c) (2006) ................................................................................................... 8

Fed. R. Civ. P. 11(b) (2006) ................................................................................................. 8

Fed. R. Civ. P. 13(a) (2006) ................................................................................................. 7

Fed. R. Civ. P. 13(f) (2006) ....................................................................................... 1, 6, 7, 8

Fed. R. Civ. P. 15(a) (2006) ........................................................................................ 1, 6, 7

N.Y. Banking Law § 602 (2006) ........................................................................................ 11

Defendant JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this memorandum of law in support of its motion, pursuant to Rules 13(f) and 15(a) of the Federal Rules of Civil Procedure, for leave to amend its answer in the form attached as Exhibit A to the Declaration of Michael S. Feldberg in Support of Motion for Leave to Amend Answer and File Counterclaims ("Feldberg Decl.").

## STATEMENT OF FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case involves a series of derivative transactions between plaintiff Peregrine Fixed Income Limited and Morgan Guaranty Trust Company of New York, now merged into JPMC, that are governed by an International Swaps Dealer Association Master Agreement (the "ISDA Master Agreement") executed by the parties on or about January 8, 1996.  Plaintiff defaulted under the ISDA Master Agreement on January 12, 1998, when the Board of Directors of plaintiff's parent resolved to be placed into provisional liquidation in Hong Kong.  Plaintiff's default caused an Automatic Early Termination of any open transactions between the parties.[1]  The ISDA Master Agreement defines the parties' rights and obligations where a party defaults.  Pursuant to the ISDA Master Agreement, JPMC closed out and valued its transactions with plaintiff by seeking quotations from Reference Market-makers to establish their market value, and paid plaintiff $57,524,016 (the "Termination Amount") on January 26, 1998.  JPMC subsequently determined that it had overpaid the Termination Amount by $622,204; plaintiff agreed, and returned that sum to JPMC.

Plaintiff and its affiliates became the subject of winding up petitions in the High Court of Hong Kong in January 1998.  JPMC, (then known as The Chase Manhattan Bank), and certain entities now merged into JPMC (Bank One N.A., which was formerly known as The First National Bank of Chicago, Bank One Hong Kong, which was formerly known as First Chicago Hongkong Ltd.,

and Bank One International Holdings Corp., which was formerly known as First Chicago International Finance Corp.), asserted claims for over $70 million against plaintiff and its affiliates. *See* Feldberg Decl., Ex. B (relating to claim by The Chase Manhattan Bank) and Ex. C (relating to claims by Bank One entities), Ex. D (timeline and documents relating to history of what is now known as JPMorgan Chase Bank, N.A.). These claims were accepted and there is no dispute that plaintiff and its affiliates owe over $70 million to JPMC in the Hong Kong liquidation proceedings, and that plaintiff and its affiliates have been making payments on that claim to JPMC. The bulk of JPMC's claim, however, remains unpaid. *See* Feldberg Decl., Exs. B and C.

The ISDA Master Agreement, which governed the transactions, grants JPMC the right to set off any amount it might owe plaintiff against any amount plaintiff or its affiliates might owe JPMC:

> if there is a Defaulting Party [here plaintiff], the Non-Defaulting Party [here JPMC] will have the right to set off, counterclaim or withhold any payment under this Agreement against any obligation of the Defaulting Party or its Affiliates to the Non-Defaulting Party or its Affiliates under this Agreement or any other agreement, whether such obligation is matured or unmatured and regardless in each case of the office or branch through which a party is acting, and the Non-Defaulting Party's obligations hereunder to the Defaulting Party shall be deemed to be satisfied and discharged to the extent of such set off, counterclaim or withholding.

Schedule to the ISDA Master Agreement, Part 5(4)(i). The ISDA Master Agreement also provides that it is a condition precedent to the payment of any obligation by JPMC to plaintiff that all obligations of plaintiff and its affiliates to JPMC and its affiliates are first paid:

> any obligation of a Non-defaulting Party [here JPMC] to make a payment to a Defaulting Party [here plaintiff] hereunder shall in any event be conditioned upon and subject to the condition precedent that and shall arise only upon the date that all indebtedness and obligations, whether

---

[1] Capitalized terms not defined in this paragraph have the same meanings as are ascribed to them in the ISDA Master Agreement.

>matured or unmatured, of the Defaulting Party or any Affiliate of the
>Defaulting Party to the Non-Defaulting Party or any Affiliate of the Non-
>Defaulting Party shall have been paid in full.

Schedule to the ISDA Master Agreement, Part 5(4)(iv).  Finally, the ISDA Master Agreement provides in Section 11 that a defaulting party, here plaintiff, indemnify and hold harmless the non-defaulting party for, among other things, legal fees:

>A Defaulting Party [here, plaintiff] will, on demand, indemnify and hold
>harmless the other party [here, JPMC] for and against all reasonable out-
>of-pocket expenses, including legal fees and Stamp Tax, incurred by such
>other party by reason of the enforcement and protection of its rights under
>this Agreement or any Credit Support Document to which the Defaulting
>Party is a party or by reason of the early termination of any Transaction,
>including but not limited to, cost of collection.

ISDA Master Agreement, Section 11.

Notwithstanding the unpaid obligations of plaintiff and its affiliates to JPMC, plaintiff commenced this lawsuit on May 3, 2005,[2] contending that because the quotations JPMC obtained from Reference Market-makers to determine the value of the terminated transactions were not valued "as of" January 12, 1998, JPMC owes an additional $14, 324,717 beyond the $56,901,812 (net) paid to plaintiff in 1998.  Following the January 26, 2006 denial of JPMC's motion to dismiss, JPMC served an Answer on February 9, 2006, asserting a proposed counterclaim for attorneys fees pursuant to Section 11 of the ISDA Master Agreement.  See Feldberg Decl., Ex. G.  JPMC amended its Answer as of right on March 1, 2006.  See Feldberg Decl., Ex. H.  JPMC could not at that time assert any counterclaims because on June 13, 2000, the United States Bankruptcy Court for the Southern District

---

[2] Plaintiff had previously brought suit in 2004 in the High Court of the Hong Kong Special Administrative Region Court of First Instance, but the court stayed those proceedings, determining that this Court is the more appropriate forum to resolve the dispute.  The court in Hong Kong ordered plaintiff to pay JPMC's legal fees, which plaintiff has not yet done.  See Feldberg Decl. Exs. E (Writ of Summons, dated January 9, 2004, and Statement of Claim, dated March 17, 2004) and F (Judgment, dated February 4, 2005).

3

of New York (Lifland, J.), in a proceeding pursuant to Section 304 of the Bankruptcy Code, *In re: Petition of David Richard Hague, Simon Charles Copley and Donald Edward Osborn, as Liquidators of Peregrine Fixed Income Limited, et al.*, Case No.: 98-B-40677, had issued an Amended Permanent Injunction, which barred any such counterclaims.  *See* Feldberg Decl., Ex. I.  The injunction also preserved any set-off rights under Hong Kong law, and stated that "this Court shall retain jurisdiction with respect to the enforcement of this Order."  Feldberg Decl., Ex. I.

Although at the time not yet able to assert its counterclaims, JPMC notified plaintiff of the substance of its proposed counterclaims for attorneys fees and set-off, and its affirmative defense of failure to satisfy a condition precedent: (1) by asserting a proposed counterclaim for attorneys fees in its Answer on February 9, 2006; (2) by providing on March 29, 2006 an expert report identifying that JPMC was claiming that plaintiff's claim was barred by its failure to satisfy the condition precedent of paying JPMC in full; and (3) by reiterating in a letter to plaintiff's counsel dated May 30, 2006 JPMC's intent to assert the failure of a condition precedent as well as JPMC's right to set off any amounts it might owe plaintiff as a result of this case against amounts plaintiff and its affiliates owe JPMC and its affiliates.  *See* Feldberg Decl., Ex. G (Answer), Ex. J (Expert Report) and Ex. K (May 30, 2006 Letter).

When settlement talks between the parties broke down, JPMC moved before Judge Lifland in the Bankruptcy Court for modification of the injunction so that it could assert its counterclaims.  On November 7, 2006, Judge Lifland granted JPMC's motion, stating "It seems that the proposed counterclaim falls well within the diligent search and reasonable inquiry that is required," and noting that here, plaintiff "targeted [JPMC] as a defendant in [plaintiff's] suit in the District Court. ... Why should [plaintiff] object to [JPMC] putting at issue those very issues that [plaintiff] targeted?  ... Swords and shields come right to the fore here."  Feldberg Decl. Ex. L (Order modifying Amended Permanent Injunction) and Ex. M at 11, 13 (transcript of hearing).

JPMC now seeks leave to amend its answer to assert its proposed counterclaims and defenses, as the Bankruptcy Court authorized.  There is no prejudice to plaintiff:  it has known that the contract provides for attorneys fees, set-off and requires that plaintiff satisfy the condition precedent of paying JPMC in full before asserting claims against JPMC, the claims arise from the same contract on which plaintiff is suing and no additional discovery is required.  As to JPMC's claim for attorneys fees, plaintiff has already been ordered by the High Court of the Hong Kong Special Administrative Region Court of First Instance (the "Hong Kong Court") to pay JPMC's costs incurred in connection with plaintiff's claims brought against JPMC there, and cannot now claim surprise at the prospect of being required to pay those Court-ordered fees as well as any fees incurred by JPMC here in connection with its defense of this action, where the contract expressly so provides and JPMC has already asserted in its Answer a proposed counterclaim for attorneys fees.  As to JPMC's assertions of failure of a condition precedent and set-off, the joint provisional liquidators of plaintiff, two of whom also served as joint provisional liquidators of plaintiff's parent, are well aware of debts owed by plaintiff's parent to JPMC and have indeed been making payments on those debts since plaintiff and its parent filed liquidation proceedings in 1998.  The joint provisional liquidators of plaintiff have thus acknowledged the debts due and owing to JPMC.  In any event, JPMC specifically notified plaintiff of its intention to assert its proposed counterclaims for attorneys fees, set-off and the defense of failure of a condition precedent in February 2006, March 2006 and again in May 2006.

This Court should deny, however, plaintiff's request for leave to assert, after discovery has closed, a new breach of contract claim against JPMC, which would claim that, when JPMC obtained market quotations from Reference Market-makers, JPMC somehow breached the contract by supplying market price variables and/or requesting hypothetical prices or indications.  This claim is entirely independent of plaintiff's previously-asserted claim that JPMC improperly obtained quotes "as

5

of" the wrong date. Permitting plaintiff to amend now would cause serious and unfair prejudice to JPMC. Had JPMC known during discovery that these issues were in the case, JPMC would have sought discovery related to such claims, such as by asking plaintiff what its other counterparties did with respect to supplying market variables and requesting hypothetical prices or indications. Contrary to what plaintiff may argue, its proposed claim is not based on newly-discovered evidence. Plaintiff has known all along that JPMC supplied market variables such as spot prices to Reference Market-makers: JPMC's January 23, 1998 letter, which is attached to plaintiff's complaint so indicates. Plaintiff chose to raise the issue in its complaint in Hong Kong but declined to do so here. Moreover, as plaintiff's proposed claim is based upon actions occurring in 1998, it is barred by the applicable statute of limitations. Lastly, on May 31, 2005, the Court gave plaintiff an opportunity to amend its complaint to assert theories in addition to the claim pled in the complaint – that JPMC breached the contract by failing to furnish market quotations "as of January 12, 1998." Plaintiff declined to do so and the Court ruled: "PL has waived opportunity to Amend at today's Court Conference." Feldberg Decl. Ex. N.

Having known the facts on which it now seeks to assert a new claim since before it began this litigation, and having waived the opportunity to amend, plaintiff should not now be permitted to add new claims.

## ARGUMENT

JPMC is entitled to leave to amend its answer under the liberal amendment policy incorporated in Rule 15(a) of the Federal Rules of Civil Procedure, which applies equally to the amendment of pleadings under Rule 13(f) to assert a counterclaim.

Pursuant to Fed. R. Civ. P. Rule 13(f), "when a pleader fails to set up a counterclaim through oversight, inadvertence, or excusable neglect, or when justice requires, the pleader may by

6

leave of court set up the counterclaim by amendment." Fed. R. Civ. P. 13(f) (2006).  Among the factors considered in granting or denying leave to allow for the addition of a counterclaim under Rule 13(f), are: (a) whether the counterclaim is compulsory, (b) whether the pleader has acted in good faith and without undue delay, and (c) whether undue prejudice would result to the plaintiff, or whether the counterclaim raises meritorious claims.  *See Fashion Fragrances & Cosmetics, Ltd. v. Croddick*, No. 02 Civ. 6294 (LAP) (MHD), 2004 U.S. Dist. LEXIS 8796, at *18 (S.D.N.Y. May 17, 2004).  Leave to amend in this context is governed by the same standards as apply to Rule 15(a) motions to amend a pleading.  *See, e.g., El Comercio Exterior de Cuba v. First Nat'l City Bank*, 744 F.2d 237, 243 (2d Cir. 1984); *Gillette Co. v. Philips Oral Healthcare, Inc.*, No. 99 Civ. 0807 (LAP) (DF), 2001 U.S. Dist. LEXIS 18624, at *14 (S.D.N.Y. Nov. 15, 2001).

      Rule 15(a) provides that, after one amendment, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and <u>leave shall be freely given</u> when justice so requires."  Fed. R. Civ. P. 15(a) (emphasis added); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962) ("Rule 15(a) declares that leave to amend 'shall be freely given when justice so requires'; this mandate is to be heeded."); *Min Jin v. Metro. Life Ins. Co.*, 295 F.3d 335, 352 (2d Cir. 2002).

      Here, JPMC's proposed counterclaims are compulsory, as they arise under the parties' ISDA Master Agreement, which forms the basis of plaintiff's claims against JPMC in this action.  JPMC has acted promptly by moving to modify the Amended Permanent Injunction when the parties ceased settlement negotiations.  The addition of JPMC's proposed amendments will not prejudice plaintiff because JPMC included its proposed counterclaim for attorneys fees in its Answer filed in February 2006, notified plaintiff of its intent to assert the failure of a condition precedent and right to set-off in March 2006 and again in May 2006, and because no discovery is required.  Lastly, JPMC's

7

proposed claims and defenses are well-supported by both fact and law, and thus raise meritorious claims under the liberal standards of Rule 13(f) and Rule 15(a).

### A. JPMC's Proposed Counterclaims are Compulsory

JPMC's proposed counterclaims are compulsory. A compulsory counterclaim arises from the same transaction or events as the claims asserted by the plaintiff, whereas a permissive counterclaim does not. Fed. R. Civ. P. 13(a) (2006).

Here, the very same contract that forms the basis of plaintiff's claim against JPMC provides that JPMC is entitled to attorneys fees incurred as a result of JPMC's efforts to protect its rights under the parties' agreement, that JPMC shall have the right to set-off and that it is a condition precedent to the payment of any obligation of JPMC to plaintiff that all obligations owed by plaintiff and its affiliates to JPMC and its affiliates are first paid.

### B. Inclusion of JPMC's Proposed Amendments Will Not Prejudice Plaintiff

Inclusion of JPMC's proposed amendments will not prejudice plaintiff because JPMC's counterclaim for attorneys fees arises out of the parties' negotiated contract, and plaintiff has been aware of and indeed been making payments on JPMC's claims. Moreover, JPMC put plaintiff on notice of its proposed amendments in as early as October 2004[3] and in February 2006, March 2006 and May 2006. Further, JPMC's proposed counterclaims require no additional discovery: the amounts that plaintiff and its affiliates owe JPMC and its affiliates are known to both parties. In fact, the contractual condition precedent provision and Fed. R. Civ. P. 9(c) mandate that plaintiff educate itself about any obligations it or its affiliates might owe to JPMC or to its affiliates before filing suit. When plaintiff

---

[3] JPMC placed plaintiff on notice of JPMC's claim for attorneys fees in October 2004 in the Hong Kong suit when JPMC submitted an Affidavit by Professor Steve Thel dated October 7, 2004, which opined that a prevailing party a U.S. litigation may recover attorneys fees if it has a contractual right to, and that Section 11 of the parties' ISDA Master Agreement provided for such fees. *See* Feldberg Decl. Ex. Q (paragraph 16 and footnote 2).

alleged in paragraph 30 of the Complaint that "PFIL duly performed all of its obligations under the ISDA Master Agreement," it must have made some inquiry as to what those contractual obligations were. Fed. R. Civ. P. 11(b). Lastly, JPMC was required to wait until the U.S. Bankruptcy Court for the Southern District of New York modified its Amended Permanent Injunction to authorize JPMC to assert such claims in this action before actually doing so, and acted promptly thereafter.

### C. JPMC's Proposed Amendments Present Meritorious Claims

JPMC proposes to assert meritorious claims and defenses for attorneys fees, set-off and failure of condition precedent. In determining whether a defense or counterclaim is meritorious, the Court must "assume the truth of the well-pled factual allegations of each claim and must draw all reasonable inferences against [the plaintiff]." *Fashion Fragrances & Cosmetics, Ltd. v. Croddick*, No. 02 Civ. 6294 (LAP) (MHD), 2004 U.S. Dist. LEXIS 8796, at *14-15 (S.D.N.Y. May 17, 2004). Indeed, "[t]his Court must read defendant's proposed amendments generously." *Veritas-Scalable Inv. Prods. Fund, LLC v. FB Foods, Inc.*, No. 3:04 CV 1199 (JBA), 2006 U.S. Dist. LEXIS 51085, at *12 (S.D.N.Y. July 26, 2006). "The issue is not whether defendant will ultimately prevail but whether defendant is entitled to offer evidence to support its claims." *Id.*, 2006 U.S. Dist. LEXIS 51085, at *12 (citation omitted). Thus, counterclaims may be deemed legally insufficient "only where it appears beyond doubt that the [pleader] can prove no set of facts in support of his claim[s] which would entitle him to relief." *Woodford v. Community Action Agency of Greene County, Inc.*, 239 F.3d 517, 526 (2d Cir. 2001).

Here, ample facts support JPMC's proposed amendments. Indeed, as the Bankruptcy Court noted at the November 7, 2006 hearing, "I see nothing inappropriate with this proposed counterclaim." Feldberg Decl. Ex. M at 14.

9

1.  **Attorneys Fees**

The terms of the parties' negotiated contract specifically provide for the payment of costs, including legal fees, to JPMC, the Non-defaulting Party here incurred in connection with the enforcement and protection of its rights under the ISDA master Agreement.  *See* ISDA Master Agreement, Section 11.  JPMC has been enforcing and protecting its rights under the ISDA Master Agreement, both in the Hong Kong lawsuit as well as in the instant action.  The Hong Kong Court has already awarded JPMC costs incurred in connection with JPMC's defense against plaintiff's claims in the HK action, which costs plaintiff has not yet paid to JPMC.  *See* Feldberg Decl. Ex. F.  JPMC is likewise entitled to costs incurred in connection with this action.  JPMC asserted a proposed counterclaim in its February 9, 2006 Answer, pending the Bankruptcy Court modifying the Amended Permanent Injunction.  Now that the Bankruptcy Court has done so, there does not appear to be any opposition to the assertion of this claim.

2.  **Set-off**

The terms of the parties' negotiated contract expressly provide for set-off of any debts owed by JPMC and its affiliates to plaintiff and its affiliates against debts owed by plaintiff and its affiliates to JPMC and its affiliates.  *See* Schedule to ISDA Master Agreement, Part 5(4).  JPMC thus seeks to set off any judgment that may be imposed in this action, which purportedly arises out of pre-petition obligations of JPMC, against the $70 million pre-petition obligations which plaintiff and its affiliates admit to having to JPMC.  Basic principles of law, and the ISDA Master Agreement, authorize JPMC to do precisely that.

JPMC has an accepted claim for over $70 million in the Hong Kong liquidation proceedings of plaintiff and its affiliates, as to which partial payments have been and continue to be

made to JPMC. The fact that those JPMC claims were held by JPMC when known by a different name (The Chase Manhattan Bank), or by entities later merged into JPMC (Bank One entities), is irrelevant as a matter of law. A name change is of no legal consequence and, under well established law, JPMC assumes all rights and liabilities of its predecessors and is the same legal entity as the entities merged into it. It is well-settled in New York that, upon merger, the surviving corporation, here JPMC, "shall be considered the same business and corporate entity as each corporation merged into it" and "any reference to the merged corporation in any contract, will or document, whether executed or taking effect before or after the merger shall be considered a reference to the receiving corporation" so long as it is not "inconsistent with the other provisions of the contract, will or document." N.Y. Banking Law § 602(1), (3) (2006). Moreover, "all property, rights, powers and franchises" of the merged corporations vested in JPMC, the "receiving corporation," which is "deemed to have assumed all of the debts, liabilities, obligations and duties" of the merged corporation, and "succeeded to all its relationships, fiduciary or otherwise, as fully and to the same extent as if such property, rights, powers, franchises, debts, liabilities, obligations, duties and relationships had been originally acquired, incurred or entered into by the receiving corporation." N.Y. Banking Law § 602(2) (2006). Likewise, federal law governing national banks provides that "the corporate existence of each of the merging banks or banking associations participating in such merger shall be merged into and continued in the receiving association [here, JPMC] and *such receiving association shall be deemed to be the same corporation as each bank or banking association participating in the merger*." 12 U.S.C. § 215a(e) (2006) (emphasis supplied); *see also* 12 U.S.C. § 215(e) (2006) (same).

    Here, JPMC is the result of a series of mergers and name changes of various predecessor entities, which together were owed over $70 million by plaintiff and its affiliates. *See* Feldberg Decl., Ex. B (relating to claim by The Chase Manhattan Bank), Ex. C (relating to claims by Bank One

11

entities), Ex. D (history of JPMC). Thus, contracts entered into by JPMC's predecessors are deemed to have been entered into by JPMC. Plaintiff acknowledges this point: it sued JPMC here, not Morgan Guaranty Trust Company, the predecessor of JPMC with which plaintiff entered into the ISDA Master Agreement and various derivative transactions, which form the basis of the litigation.

As the debts that JPMC seeks to set-off are mutual pre-petition debts, and the parties' negotiated contract specifically provides for set-off, JPMC's claim for set-off is well-supported by the facts and the law.

### 3. Failure of Condition Precedent

The terms of the parties' negotiated contract specifically provide that any payment by the Non-defaulting Party, here JPMC, is conditioned upon the prior full payment of obligations owed by the Defaulting Party, here plaintiff, and its affiliates, to JPMC and its affiliates. Plaintiff and its affiliates owe JPMC $70 million in the Hong Kong liquidation proceedings and have been making payments on those claims to JPMC. *See* Feldberg Decl., Ex. B (relating to claim by The Chase Manhattan Bank), Ex. C (relating to claims by Bank One entities). As full payment on those debts has not yet been and most likely will never be made, *see* Feldberg Decl., Ex. O, plaintiff has failed to perform a condition precedent to any obligation of JPMC to pay plaintiff under the ISDA Master Agreement executed by the parties. Thus, JPMC is excused from any obligation to pay plaintiff here.

### D. Plaintiff's Proposed Amendments Should be Rejected

This Court should deny plaintiff's request to amend its Complaint to assert an entirely new claim for breach of contract based on the supplying of market variables and requesting hypothetical prices or indications.

Plaintiff's proposed claim is not even professed to be based on any newly-discovered evidence. Indeed, Plaintiff has had notice of JPMC quotation process since January 23, 1998, when it

first received JPMC's calculation statement, which clearly indicated the information JPMC supplied to the Reference Market-makers when it requested quotations. This same calculation statement was attached as an exhibit to plaintiff's complaint in this action. Indeed, plaintiff asserted in the Hong Kong Court action a claim on the same grounds. *See* Feldberg Decl. Ex. M at ¶ 14. Plaintiff chose not to assert such a claim here, and specifically declined the Court's invitation to amend its Complaint in May 2005. *See* Feldberg Decl. Ex. N (Case Management Plan noting "PL has waived opportunity to Amend at today's Court Conference.").

In any event, plaintiff's proposed claim, which is based on actions occurring more than six years prior to the commencement of this action, is barred by the statute of limitations. On January 28, 2005, the parties agreed to extend the statute of limitations "in the event that the Plaintiff commences proceedings in the SDNY Court in respect of the transactions referred to in the Writ of Summons in the Hong Kong Proceedings dated 9 January 2004 and for the same causes of action and relief (or their equivalent under New York law) set forth in the Statement of Claim dated 17 March 2004 within 3 months from the date of the final determination of the Defendant's application … pursuant to which a stay of the Hong Kong Proceedings is granted." *See* Feldberg Decl. Ex. P (Undertaking) and Ex. E (Writ of Summons and Statement of Claim). Here, plaintiff's proposed claim was not raised within the agreed-upon three month window following the February 4, 2005 determination of JPMC's application, and as such is barred by the statute of limitations.[4]

Inclusion of plaintiff's proposed claim would also unduly prejudice JPMC. Fact discovery has now been closed for nearly a year. Had JPMC known during discovery that this issue was in the case, JPMC would have asked, for example, plaintiff for documents and witness testimony

---

[4] Having not yet been served with plaintiff's proposed amended complaint, JPMC reserves for the Reply brief an argument that the proposed claim lacks merit.

13

relating to these issues, including but not limited to information concerning what plaintiff's other counterparties did with respect to supplying market variables and requesting indications.  Now, nearly a year after discovery has been closed, plaintiff wishes to assert a new claim despite having specifically declined to do so in May 2005.  As plaintiff has can offer no excuse for its delay, and given the undue prejudice to JPMC that would result, plaintiff should not be permitted to amend its Complaint to assert a new breach of contract claim based on the supplying of market variables or the requesting of hypothetical prices or indications when requesting market quotations from Reference Market-makers.

## CONCLUSION

For the above-stated reasons, JPMorgan Chase Bank respectfully requests that the Court grant JPMC leave to file a second amended answer to assert counterclaims, and deny plaintiff leave to amend its Complaint.

Dated: New York, New York
December 8, 2006

Respectfully submitted,

ALLEN & OVERY LLP

By:  /s/ Michael S. Feldberg
Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendant
JPMorgan Chase Bank*

14