**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

------------------------------------------------------------------ x
                                                                   :
Peregrine Fixed Income Limited (in liquidation),                   :     Case No. 05-CV-4351 (RMB)
                                                                   :
                              Plaintiff,                                  :
                                                                   :
                           -against-                                     :
                                                                   :
JP Morgan Chase Bank (formerly known as The Chase                  :
Manhattan Bank and having merged with Morgan                       :
Guaranty Trust Company of New York),                               :
                                                                   :
                           Defendant.                                  :
------------------------------------------------------------------ x


**REPLY BRIEF BY JPMORGAN CHASE BANK, N.A. IN FURTHER SUPPORT OF**
<u>**MOTION FOR LEAVE TO AMEND ANSWER AND FILE COUNTERCLAIMS**</u>


                                                            ALLEN & OVERY LLP
                                                            Michael S. Feldberg (MF-3974)
                                                            1221 Avenue of the Americas
                                                           New York, New York  10020
                                                           Tel: (212) 610-6300

                                                           *Attorneys for Defendant*
                                                            *JPMorgan Chase Bank, N.A.*

Defendant JPMorgan Chase Bank, N.A. ("JPMC") respectfully submits this reply brief in further support of its motion for leave to amend its answer and in opposition to the cross-motion by plaintiff for leave to amend the complaint.

## ARGUMENT

**I.   THIS COURT SHOULD GRANT JPMC'S MOTION FOR LEAVE TO AMEND ANSWER AND FILE COUNTERCLAIMS**

### A.   **JPMC Has a Meritorious Claim to Set-Off Mutual Pre-Petition Debts.**

Plaintiff does not dispute that its affiliate owes JPMC $70 million, that the parties' contract provides JPMC the right to set off any payment by JPMC under the contract against any obligation of plaintiff or its affiliates, that full payment by plaintiff and its affiliates to JPMC is a condition precedent to any payment by JPMC, and that condition precedent has not been satisfied. Plaintiff's principal argument is that its claim against JPMC, and JPMC's claim against plaintiff, are not mutual pre-petition debts. Plaintiff is flat wrong.

Plaintiff sues JPMC for an alleged breach of contract entered into by Morgan Guaranty Trust ("MGT"), an entity that plaintiff admits has since merged into, and is known today as, JPMC. Plaintiff concedes that, "[h]ad [plaintiff] or its affiliates owed money to MGT at the time that [plaintiff] filed for liquidation, then MGT would have had a right to set off claims against MGT's debt to [plaintiff]." (Opposition Brief, 14). As plaintiff admits by naming JPMC as the defendant, MGT no longer exists, and, by operation of law, the rights and obligations once held by MGT are held by JPMC as if JPMC held them in the first instance. Indeed, plaintiff's entire claim is premised on the fact that, by operation of law, any pre-petition debt allegedly owed by MGT is a pre-petition debt owed by JPMC. The exact same reasoning applies to JPMC's claims against plaintiff: a pre-petition debt owed to any of JPMC's predecessor entities is likewise a pre-petition debt owed to JPMC.

1

Plaintiff cites no authority to support its argument that a merger or name change transforms a valid pre-petition debt into a post-petition debt. Instead, plaintiff refers the Court to the U.S. Bankruptcy Code and *Collier on Bankruptcy* for the non-controversial premise that a post-petition debt may not be set-off against a pre-petition debt, and that "these rules are in place to prevent creditors from acquiring claims at favorable prices in order to escape debt and take unfair advantage of other creditors." *See* Opposition Brief, 8-9. Here, however, there was no such post-petition transfer. Instead, the debts all existed prior to the mergers in 2001 and 2004, and JPMC, as the surviving entity, simply continues to hold the right to the debt. Plaintiff does not dispute the authorities demonstrating that, as the surviving entity of a merger, JPMC assumes all rights and liabilities of its predecessors, is the same legal entity as the entities merged into it and any reference in a contract to a merged corporation is considered a reference to JPMC, regardless of when that contract was executed. *See* N.Y. Banking Law § 602(1)-(3) (2006); 12 U.S.C. § 215a(e) (2006); 12 U.S.C. § 215(e) (2006).

Plaintiff's argument that "the parties' ISDA Master Agreement is no longer in effect" (Opposition Brief, 10) defies logic. The ISDA Master Agreement defines the parties' ongoing rights and obligations after the parties' transactions terminate:

> Upon the occurrence or effective designation of an Early Termination Date, no further payments or deliveries under Section 2(a)(i) or 2(e) in respect of the Terminated Transactions will be required to be made, <u>but without prejudice to the other provisions of this Agreement</u>. The amount, if any, payable in respect of an Early Termination Date shall be determined pursuant to Section 6(e).

ISDA Master Agreement, §6(c)(ii) (emphasis added). Taken to its logical conclusion, plaintiff's argument – that the provisions of the ISDA Master Agreement governing what happens after the transactions are terminated – would bar its own claim here, which is based entirely on a claim that JPMC breached the ISDA Master Agreement in closing out its transactions with JPMC.

2

### B. JPMC Has a Meritorious Defense of Failure to Satisfy A Condition Precedent.

Plaintiff makes no argument whatsoever against JPMC's proposed defense that plaintiff has failed to satisfy the contractual condition precedent of paying in full all indebtedness and obligations of plaintiff and its affiliates to JPMC.

### C. JPMC is Entitled to Attorneys Fees.

Section 11 of the ISDA Master Agreement specifically provides for the payment of costs, including legal fees, incurred by JPMC in connection with the enforcement and protection of its rights under the ISDA Master Agreement. Plaintiff's argument that the ISDA Master Agreement bars JPMC's claim for attorney's fees is simply wrong. Plaintiff quotes the definition for Loss, a calculation method that the parties did not select here. According to Part 1(7) of the Schedule to the parties' ISDA Master Agreement, as well as ¶ 14 of the Complaint, the parties selected the Market Quotation method to calculate close-out amounts in the event of an early termination. In any event, even if Loss were applicable, the definition of Loss[1] simply provides that the calculation under Loss does not include attorneys fees because they are provided for separately under Section 11 of the ISDA Master Agreement, the section on which JPMC's claim rests.

---

[1] Section 14 of the ISDA Master Agreement defines Loss as follows:

> "Loss" means, with respect to this Agreement or one or more Terminated Transactions, … the Termination Currency Equivalent of an amount that party reasonably determines in good faith to be its total losses and costs … in connection with this Agreement or that Terminated Transaction or group of Terminated Transactions, as the case may be…. Loss includes losses and costs (or gains) in respect of any payment or delivery required to have been made (assuming satisfaction of each applicable condition precedent) on or before the relevant Early Termination Date and not made, except, so as to avoid duplication, if Section 6(e)(i)(1) or (3) or 6(e)(ii)(2)(A) applies. **Loss does not include a party's legal fees and out-of-pocket expenses referred to under Section 11.**

3

      D.      **Inclusion of JPMC's Counterclaims and Defenses Will Not Unduly Prejudice Plaintiff.**

            1.      **No Additional Discovery Is Required.**

Plaintiff already knows all of the facts relevant to JPMC's proposed claims and defenses: that its affiliate, Peregrine Investment Holdings Limited ("PIHL"), owes JPMC $70 million, and that various banks have merged into the entity now known as JPMC. Two of plaintiff's liquidators – David Edward Osborn and David Richard Hague – also serve as liquidators of PIHL. *See* Amended Permanent Injunction (Feldberg Decl. Ex. I). The liquidators have accepted the precise claims at issue here, including those by The Chase Manhattan Bank, First National Bank of Chicago, First Chicago Hongkong Ltd. and First Chicago International Finance Corporation, as claims due and owing to JPMC. Indeed, Mr. Hague himself authored letters addressed to the Bank One entities and then to JPMC acknowledging the fact of the mergers between the First Chicago entities into the Bank One entities, and the merger of the Bank One entities into JPMC. Mr. Hague also authored letters addressed to JPMC declaring dividends on these same claims, and payment of dividends in 2005 were made by checks payable to JPMC. *See* Feldberg Declaration, Exhibits B & C.

In any event, the fact of the mergers and name changes are a matter of public record. As indicated by the coversheet to the press release attached as Exhibit D to the Feldberg Declaration dated December 8, 2006, this information was filed as part of First Chicago NBD Corp's Form 8-K, filed with the SEC on July 19, 1995.[2]

---

[2] For the convenience of the Court and plaintiff, a complete copy of the Forms 8-K filed by First Chicago NBD Corp. and Bank One Corp. on July 19, 1995 and October 6, 1998 respectively are attached as Exhibits 1 and 2 to the Supplemental Declaration of Michael S. Feldberg.

4

### 2.   JPMC Timely Asserted Its Proposed Counterclaims.

At most, plaintiff claims that JPMC "delayed" in moving for leave to amend. Delay alone, however, in the absence of a showing of undue prejudice or bad faith, typically provides an insufficient basis for denying a motion to amend. *See Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234-35 (2d Cir. 1995); *see, e.g., Veritas-Scalable Inv. Prods. Fund, LLC v. FB Foods, Inc.*, No. 3:04 CV 1199 (JBA), 2006 U.S. Dist. LEXIS 51085, at *11 (S.D.N.Y. July 26, 2006) ("[t]he Second Circuit has routinely excused delays of more than two years," and holding "defendant's delay in seeking leave to amend its answer and counterclaims, alone, is not grounds for denying its motion"). This is true even where a defendant could have but did not assert its counterclaim earlier. *See, e.g., Sea Trade Co. v. FleetBoston Fin. Corp.*, 03 Civ. 10254 (JFK), 2006 U.S. Dist. LEXIS 69112, at *4-7 (S.D.N.Y. Sept. 26, 2006) (although movant arguably "had the necessary information it needed to assert a counterclaim … at the time it filed its original answer" and "was somewhat dilatory" in not verifying the basis for its claim sooner, holding that "the mere fact of delay does not necessarily imply bad faith"). Where plaintiff is already on notice of the claims, a motion to amend is generally permitted, even if plaintiff is required to expend additional costs and effort to address the counterclaim. *See id.*, 2006 U.S. Dist. LEXIS 69112, at *6-7 (no undue prejudice where "the assertion of FleetBoston's counterclaim will not surprise [plaintiff] and is unlikely to result in [plaintiff's] spending significant resources to conduct additional discovery or prepare for trial").

In this case, JPMC did not have occasion to assert counterclaims until February 2006 when it filed its Answer and asserted the attorneys fees claim. JPMC notified plaintiff of its intended counterclaim for set-off only a few months later in May 2006.[3] As noted in our moving

---

[3] Contrary to plaintiff's assertion in footnote 2 of the Opposition Brief, in addition to notifying plaintiff of its proposed counterclaims, counsel for JPMC on June 16, 2006 sent to counsel for

papers, JPMC did not immediately move the U.S. Bankruptcy Court to modify the Amended Permanent Injunction because the parties were in the midst of settlement negotiations.  Plaintiff's argument that "the potential prejudice to PFIL is overwhelming" because JPMC's set-off counterclaim is "many times greater than" plaintiff's claim turns logic on its head:  it is JPMC that would be prejudiced if not permitted to amend because it is the party still owed a large debt.

## II. THIS COURT SHOULD DENY PLAINTIFF'S MOTION FOR LEAVE TO AMEND THE COMPLAINT

This Court should deny plaintiff's request for leave to assert new allegations of supplying market price variables and/or requesting hypothetical prices or indications, because the proposed allegations fail to state a claim for which relief can be granted and inclusion of the amendments a year after discovery has closed will unduly prejudice JPMC.

### A. **Plaintiff's Proposed Amendments Do Not Present Meritorious Allegations.**

Plaintiff's proposed allegations relating to requesting "indications" and supplying exchange rates fail to state a claim for which relief can be granted because neither constitutes a breach of contract.  Plaintiff does not cite any language in the contract which the alleged conduct violates.  Moreover, Don Thompson, who is the co-chair of ISDA's documentation committee and was an active member of the documentation committee that drafted the 1992 ISDA Master Agreement, testified that the ISDA Master Agreement does not prohibit a party from requesting "indications," and such requests are in fact in accordance with market practice:

> Q.   And with regards to valuing the specified transactions by the Reference Market makers, do you know why JPMorgan only requested indications versus actual market quotes?
> A.   I believe that was -- yes, that was, first of all, in accordance with the provisions of the agreement, which does not require or which does not prohibit the obtaining of indicative quotations and, secondly, it's in accordance with market practice.

---

plaintiff a copy of the documents relating to the proofs of claim by JPMC's predecessor entities and related correspondence.

> Q. Well, we will start, then, with ISDA Master Agreement. Where in the agreement does it say you were permitted to get indications?
> A. **It does not prohibit the obtaining of indications**.
> Q. But it also does not say –
> A. It does not expressly provide that indicative quotations are to be obtained.
> Q. And then, with regards to market practice, maybe you can explain to me what you mean, that that is proper or used in market practice.
> A. **It is my understanding that most, if not all, major dealers, when involved in closeouts, obtain indicative quotations.**

Thompson Deposition, at 14:2-14:20, 151:20-152:25 (Supp. Feldberg Decl. Ex. 3). Mr. Thompson explained that "indicative" quotes are "absolutely fair" and "commercially reasonable" because

> … the ISDA agreement market quotation process is a liquidated damages provision … amounts calculated pursuant to Section 6 are -- I believe the phrase is a reasonable pre-estimate of damages …. The agreement clearly provides that the process, the market quotation process, is an estimate only and may well not be the value that the defaulting party could have realized if, for example, he were to have conducted an auction as a going concern and auctioned off all of the transactions to the highest bidder.

Thompson Deposition, at 169:2-170:11 (Supp. Feldberg Decl. Ex. 3). Mr. Thompson also testified that supplying exchange rates was appropriate under the ISDA Master Agreement:

> A. I believe -- I am not sure whether -- some of it is accurate. I know, in some of the transactions, we did provide one of the variables, which was the spot exchange rate at the time.
> Q. And, based on your understanding of the ISDA Master Agreement, is that appropriate?
> A. Yes.
> Q. Why?
> A. Because it enables parties who are providing, for instance, a valuation of an option position, to isolate the value of the option as opposed to the separate immaterial value -- or differences in value which may be attributable to using different spot rates.
> As a practical matter, when you are getting a quote for an option position, it will be more difficult to obtain that quotation if you also require that option trader who is trading options, not the spot position, to provide both the spot position and the intrinsic value of the option.
> Q. Was --
> A. So we made the decision at the time to provide the spot rate in order to isolate and fix that and enable the quoting dealers to provide quotes on the value of the option which was, by far, the overwhelming value of the position, as I understand it.

7

Thompson Deposition, at 154:14-156:24 (Supp. Feldberg Decl. Ex. 3).  Piers Murray, the trader most heavily involved in the close-out of JPMC's transactions with plaintiff, also testified that the provision of spot references was in accordance with market practice, and for the purpose of obtaining quotations in the most efficient way possible.  Murray Deposition, at 43:2-44:21, 52:22-53:4, 89:14-92:3 (market practice), 55:23-56:2 (efficiency) (Supp. Feldberg Decl. Ex. 4).

Thus, by the terms of the parties' contract and by the undisputed testimony of the fact witnesses in this case, the requesting of "indications" and the supplying of spot rates do not amount to a breach of the parties' contract.  In opposition, plaintiff cites no evidence and can only muster the opinion of Dr. David DeRosa, who admitted that he played no role in the negotiation and drafting of the ISDA Master Agreement and does not claim to have any experience supervising or personally handling a close-out under the ISDA Master Agreement.  *See* DeRosa Rebuttal Report, p. 3 (Supp. Feldberg Decl. Ex. 5).  Nonetheless, Dr. DeRosa opines that, based on his knowledge of market practices, such actions constitute a breach of the parties' agreement.  However, "[p]roof of general custom or usage may not be interposed to alter, vary or contradict unambiguous contractual provisions or modify or change legal obligations assumed by the parties under their contracts." *Webb v. Kenney*, 234 F. Supp. 2d 197, 202 (E.D.N.Y. 2002) (citation omitted).  As the requesting of "indications" and the supplying of spot references is not prohibited by the terms of the parties' agreed-upon contract, Dr. DeRosa's untested opinion to the contrary cannot form the basis of a claim here.[4]

Lastly, plaintiff's proposed amendments are also barred by the statute of limitations.  They allege a new breach of contract claim pertaining to events that occurred in 1998.

---

[4] There is a bit of irony in plaintiff resting its entire proposed claim on the opinion of an expert whom, despite JPMC's repeated requests since August 2006, plaintiff has thus far declined to produce for deposition.

8

### B. Inclusion of Plaintiff's Proposed Amendments Will Unduly Prejudice JPMC.

Permitting plaintiff to amend now would cause serious and unfair prejudice to JPMC because plaintiff's proposed amendments assert a claim entirely unrelated to plaintiff's only asserted claim: that JPMC breached the parties' contract by not obtaining quotes "as of" January 12, 1998. Fact discovery has now been closed for nearly a year. While plaintiff correctly notes that JPMC served several discovery requests seeking information relating to close-outs by plaintiff's other counterparties, plaintiff neglects to inform the Court that plaintiff objected to each of these requests as "overly broad, unduly burdensome and not reasonably calculated to the discovery of admissible evidence," or beyond the scope of Local Rule 33.3, and agreed only to produce documents and information relating to plaintiff's transactions with MGT and not as to the practice of other market participants. (Supp. Feldberg Decl. Exs. 6, 7, 8). On the morning of the deposition of plaintiff's 30(b)(6) witness, Simon Copley, plaintiff produced documents relating to close-outs by a self-selected handful of its counterparties. JPMC questioned Mr. Copley regarding the close-outs by these and other counterparties, but, as demonstrated by the excerpt highlighted in plaintiff's brief, Mr. Copley was not forthcoming with information. Plaintiff cannot withhold discovery relating to an issue, and then make it the basis of a new claim.

In proceedings before Magistrate Judge Katz between March and October 2006 on a different issue, JPMC again requested that plaintiff provide documents and information relating to the close-outs by plaintiff's other counterparties. Plaintiff provided none. During a conference call with the parties on October 4, 2006, Magistrate Judge Katz, while stating that there would not be a wholesale reopening of discovery, ordered plaintiff to provide a summary or compilation chart, if any, of close-outs by plaintiff's other counterparties, and to provide all documents relating to the closeouts by nine counterparties. To this date, plaintiff has not

9

provided any summary chart nor any additional documents.

If plaintiff is allowed to add its proposed breach of contract claim, JPMC will have to re-open discovery as to what the plaintiff's other "couple of hundred counterparties"[5] did in closing out transactions with plaintiff.

### C. Plaintiff Has Waived Its Right to Amend.

Contrary to plaintiff's argument, the Court's May 31, 2005 Order was not limited. It reads: "PL has waived opportunity to Amend at today's Court conference." But if the Order were somehow limited, as plaintiff claims, to potential claims for bad faith, surely a potential claim that JPMC tried improperly to influence Reference Market-makers is a claim that JPMC acted in bad faith. In any event, plaintiff offers no explanation for the fact that in its original Hong Kong action, it included its claims regarding market variables, but chose not to include them in the subsequent action in this Court.

### CONCLUSION

For the above-stated reasons, JPMorgan Chase Bank respectfully requests that the Court grant JPMC leave to file a second amended answer to assert counterclaims, and deny plaintiff leave to amend its Complaint.

Dated: New York, New York
       January 5, 2007

Respectfully submitted,

ALLEN & OVERY LLP

By: /s/ Michael S. Feldberg
     Michael S. Feldberg (MF-3974)
1221 Avenue of the Americas
New York, New York 10020

*Attorneys for Defendant*
  *JPMorgan Chase Bank, N.A.*

---

[5] *See* Copley Deposition at 53:9-53:15 (Supp. Feldberg Decl. Ex. 9).

10